SPRINGER and wife, Appellants, v. CHAFEE and others, Respondents.

*November 3—December 2, 1958.*

476

For the appellants there was a brief by *Van Susteren &
Bollenbeck* of Appleton, and oral argument by *Urban P. Van
Susteren.*

For the respondents there was a brief and oral argument
by *Edgar E. Becker* of Appleton, and *Arnold J. Cane* of
Menasha.

FAIRCHILD, J.   (1) *The oral agreement.*   In the circuit
court the plaintiffs apparently relied upon the theory of part
performance of an oral agreement.   In order to sustain this

theory upon appeal, plaintiffs would need to overturn the finding of the circuit court that no agreement was reached on the subject of a new cottage to be built by plaintiffs on the rear portion of the property.

On this issue Mr. Springer testified to the effect that on May 30th there was no talk about his being required to build a second cottage; that what was said about a cottage to the rear was that if Springer did choose to tear down the existing cottage, he would be required to provide a place for Mrs. McGrath to live.

Several of the defendants testified to the effect that there was discussion on May 30th, about the fact that the existing cottage was not suitable for wintertime occupancy and that a small place where Mrs. McGrath could live might be erected at the rear; that defendants might have some use of the new cottage; that there was no discussion of who would eventually own the cottage at the rear; that no decision was reached on this part of the matter under consideration.

Mrs. Rank testified that about a week after the May 30th meeting, plaintiffs talked with her; that Mr. Springer said he "figured that it was a pretty good arrangement, and that if conditions were met, why . . . and could be met, why, they would take it into consideration until such time as there was a contract drawn up . . . which was all right." Shortly after that conversation she testified that there was another conversation: "Well, I understood that Mrs. Reitzner was going to raise their rent . . . and they said, 'Well, would it be all right if instead of staying over there and having their rent raised, it would be all right if they moved in the cottage' and I said, 'Well, of course.' At that time it seemed a good idea. Mother wouldn't be alone if they did move in; and I was glad of the opportunity to have somebody in the cottage with her." Mr. Springer denied that the rent was to have been raised where the plaintiffs were then living.

Springer made a payment of $35 to Nancy Rank on January 8, 1955. She signed a receipt made out by him describing the money "as part of $3,000 payment for home on Lake Winnebago." Receipts for later payments of $35 each were given as follows:

February 5th, "as part payment on house" signed by William's wife; and March 4th, April 8th, May 6th, June 4th, July 30th, September 3d, September 26th, October 31st, and December 3d, "as part payment on house" or "as part payment on house at lake," signed by Dudley (William).

It appears to be plaintiffs' position that the acts of all parties are more consistent with the view that a definite and complete proposal was made to plaintiffs on May 30th by some of the defendants, was accepted and performed by plaintiffs until further performance was rejected in late 1955, and was ratified by those defendants who were not present on May 30th. Nevertheless, it is conceivable that the parties did not reach complete agreement with respect to plaintiffs' obligation to construct a second cottage and with respect to the interest defendants might have in it after Mrs. McGrath's death; that the parties contemplated that there would be further negotiation if the Springers expressed an interest, that an agreement would be reached and expressed in writing, and that the payments made by Springer were made and received on the assumption that an agreement would be worked out and the payments would then apply. Plaintiffs had the burden of proof and the trial court, after hearing the witnesses, found against them on this issue. The finding is not against the great weight and clear preponderance of the evidence.

(2) *The receipts.* On this appeal plaintiffs have urged that the receipts, all being bound together in an ordinary book of receipt forms, constitute a memorandum in writing sufficient to comply with the statute of frauds, sec. 240.08, Stats. Plaintiffs assert that the reference to the home on

Lake Winnebago can be rendered sufficiently certain by resort to evidence of circumstances including the delivery to plaintiffs' attorney of an abstract containing a description of the premises. Defendants challenge the receipts as not sufficiently identifying the property to constitute a written memorandum complying with the statute.

Nancy Rank signed one receipt, William signed nine, and his wife signed one. There is no direct evidence of any authorization given to those three defendants by the others. If the receipts bound those three, there would still be the question of whether the others were bound.

Passing over these two contentions, we conclude that the receipts do not constitute a sufficient written memorandum under the circumstances presented by this record. Sec. 240.08, Stats., requires that the memorandum must express the consideration for the sale of real estate. None is expressed in any receipt except the one signed by Mrs. Rank on January 8th. In that one the only consideration referred to is a $3,000 payment. Taking plaintiffs' claim at face value, however, real estate worth $6,000 or more was being sold for $3,000 payable over seven years without interest plus a promise to provide Mrs. McGrath with a place to live without rent for the rest of her life. The latter part of this consideration was still very substantial on January 8th while Mrs. McGrath was still alive, and, in fact, before the commencement of her last illness. Because plaintiffs were attempting upon the trial to prove an oral agreement, the evidence of the discussions which they claimed ripened into an oral agreement was either introduced by plaintiffs or received without objection.

It has been held that a memorandum which does not include a material and essential part of the agreement, such as an assumption of a mortgage by the purchaser, is not sufficient. *Merten v. Koester* (1929), 199 Wis. 79, 225 N. W. 750. The record here shows without dispute that if there was

an agreement on or before January 8, 1955, contrary to the finding of the court, a very material part of the consideration for the agreement to sell was not mentioned in the receipt. We, therefore, view the receipts as insufficient to establish the contract claimed by plaintiffs.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.